**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| JEFFREY GRAY,<br><br>            *Plaintiff,*<br><br>    v.<br><br>ROBERT HEMMINGER, a Lieutenant of the Port Wentworth Police Department, in his individual capacity,<br><br>            *Defendant.* | Civil Action No.: _____<br><br>**COMPLAINT FOR CIVIL RIGHTS VIOLATION**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.      "To let a policeman's command become equivalent to a criminal statute comes dangerously near making our government one of men rather than of laws." *Gregory v. City of Chicago*, 394 U.S. 111, 120 (1969) (Black, J., concurring).

2.      Port Wentworth Police Sgt. Robert Hemminger knew that Jeffrey Gray wasn't doing anything wrong or unlawful when Gray stood outside of Port Wentworth's City Hall displaying a sign reading "God Bless the Homeless Vets." Sgt. Hemminger told Gray as much, and he told the employees inside City Hall the same thing: Gray was not doing anything wrong.

3.      Although Gray was holding his sign peacefully and never obstructed or interfered with City Hall's operation, the employees inside City Hall were displeased by Gray's exercise of his First Amendment rights, telling Sgt. Hemminger: "He can't stand in front of our City Hall talking about 'support the homeless vets.' We can't have that."

4.      So, at the employee's direction, Sgt. Hemminger told Gray that although he wasn't doing anything wrong, he was asking Gray to leave. Gray then asked whether

he was *required* to leave and began using his phone to record what the Sgt. Hemminger's actions. As a result, Sgt. Hemminger *refused* to let Gray leave, demanding his identification.

5. When Gray hesitated, telling Sgt. Hemminger that he was trying to comply with his demand to leave, Sgt. Hemminger arrested him for obstruction.

6. Gray files this suit to vindicate his right to freedom of expression in the open public spaces outside of government buildings like Port Wentworth's City Hall without fear of arrest and prosecution. Sgt. Hemminger never had cause to eject Gray from a public space, let alone arrest him. Public spaces in front of government buildings are traditional public forums for expressive activity—not, as Sgt. Hemminger wrongly claimed, "private" property immune from the First Amendment's sweep.

## JURISDICTION AND VENUE

7. This action arises under the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

8. This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and Local Rule 2.1(a) because a substantial part of the events alleged here occurred in Chatham County, which is located in the Savannah Division of the Southern District of Georgia.

## THE PARTIES

10. Plaintiff Jeffrey Gray is a citizen of the United States and a resident of St. Johns County, Florida. He believes in raising awareness of the plight of homeless veterans, protecting constitutional rights, and ensuring that law enforcement officers

honor their oath "to support and defend" the United States Constitution. On July 19, 2021, a police officer employed by the City of Port Wentworth ignored that oath when he sought to expel Gray from an open public space—and ultimately arrested him—for engaging in expression protected by the First Amendment.

11.    Defendant Robert Hemminger is an officer of the Port Wentworth Police Department. On July 19, 2021, Sgt. Hemminger—since promoted to Lieutenant—arrested Gray for standing in an open public space outside of Port Wentworth City Hall with a sign reading "God Bless the Homeless Vets," for filming Hemminger, and for asking questions about Hemminger's authority to require him to identify himself. At all times relevant to the Complaint, Sgt. Hemminger acted under the color of law. Sgt. Hemminger is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### *The open public space in front of Port Wentworth City Hall is traditionally used for speech, assembly, and petition.*

12.    The open public space outside of the Port Wentworth City Hall is a traditional public forum.

13.    This space has regularly been utilized for public debate and assembly by citizens, candidates, and officials.

14.    This space is used for demonstrations, protests, press conferences, concerts, and other expressive activity.

15.    Recent examples of these uses include:

(a)    On June 25, 2020, community members gathered in front of City Hall to hold a demonstration in protest of zoning proposal.

(b)    On June 11, 2021, Julius Hall, a local political activist, gathered with dozens of friends, family, faith leaders, and local politicians in front of City Hall to announce his candidacy for mayor. Hall and his

supporters again assembled in front of City Hall on August 31, 2021, to protest the city's decision to exclude him from the race.

(c)   On July 9, 2021, Gabrielle Nelson, then a member of the planning commission, gathered with family and supporters in front of City Hall to announce her candidacy for City Council.

(d)   On July 14, 2021, Alfonso Ribot, leader of the local Chamber of Commerce, gathered with family and supporters in front of City Hall to announce his candidacy for City Council.

(e)   On February 21, 2022, Port Wentworth's mayor *pro tem* gave a speech in front of City Hall, denouncing city officials.

(f)   On March 10, 2023, a former Port Wentworth police officer—joined by local pastors, politicians, and friends—held a prayer circle and demonstration in front of City Hall to protest his forced resignation over a Facebook post. The former officer and his supporters then entered City Hall to deliver a petition to the city manager.

(g)   On June 2, 2023, the City of Port Wentworth held a free summer concert outside City Hall.

### *Port Wentworth employees direct police to expel Gray from the open public spaces outside of Port Wentworth City Hall.*

16.   On July 19, 2021, Gray stood in this open public space in front of Port Wentworth City Hall holding a sign reading "God Bless the Homeless Vets."

17.   Sgt. Robert Hemminger approached Gray, telling Gray that "the ladies" inside City Hall—referring to two municipal employees—"have asked me if you can't go find another location to hang out."

18.   Sgt. Hemminger's interactions with Gray were recorded on his body camera. That footage is available at https://www.youtube.com/watch?v=bStuhg3AdTI..

19.   Sgt. Hemminger told Gray that he wasn't "doing anything wrong, not breaking any laws by any means."

20.   Sgt. Hemminger told Gray that the open public space in front of City Hall is "city property."

21.     Sgt. Hemminger told Gray that it's "city property, so we're just asking, if you don't mind, just find another location."

22.     Sgt. Hemminger again told Gray that Gray was "not breaking any laws" and "not in any trouble."

23.     When Gray said that he would "rather not" leave and wanted to continue to stand there, Sgt. Hemminger told Gray that "because it's city property," City Hall employees "can ask you to leave if they want you to."

24.     After Gray again declined to leave, Sgt. Hemminger said "sounds good" and went back inside City Hall.

25.     Sgt. Hemminger told the two employees that if they "don't feel comfortable with" Gray standing out there, despite his "good message," Gray would "have to leave the property."

26.     One of the employees laughed at Sgt. Hemminger's suggestion, responding: "He can't stand in front of our city hall talking about 'support the homeless vets.' We can't have that."

### *Sgt. Hemminger confronts Gray and arrests him for questioning his authority.*

27.     Sgt. Hemminger again approached Gray.

28.     Gray began video-recording Sgt. Hemminger on his phone.

29.     Sgt. Hemminger noticed that Gray was filming him.

30.     Sgt. Hemminger claimed that he had "no problem" with Gray filming him—a claim belied by Hemminger's subsequent complaint that recording him was part of a "game."

31.     Sgt. Hemminger told Gray that because Gray was "on city property," the city employees "have the right to ask you to leave."

32.     Sgt. Hemminger told Gray that "if you refuse to leave, then it would be trespassing, and then you'd be in trouble."

33.     Gray asked Sgt. Hemminger: "Is this city property?"

34.     Sgt. Hemminger responded: "All of this is City Hall. This is city property."

35.     Gray asked Sgt. Hemminger: "Am I being trespassed?"

36.     Sgt. Hemminger responded: "As of now you are. Give me your ID. Now it's an investigation."

37.     At that point, Gray said he would leave.

38.     Gray wanted to leave.

39.     Gray wanted to comply with Sgt. Hemminger's request.

40.     Gray told Sgt. Hemminger that he wanted to leave.

41.     Sgt. Hemminger refused to let Gray leave.

42.     Sgt. Hemminger told Gray: "Nope. Give me your I.D. You're not free to go now because you want to play the game."

43.     Gray asked what crime he was suspected of committing.

44.     Sgt. Hemminger responded that it was "your failing to follow a lawful order, which is: they've asked you to leave city property, or asked me to ask you to leave, you're refusing to do so."

45.      Sgt. Hemminger told Gray that Gray "failed to comply with my investigation, which was: I asked you to leave nicely initially, you wanted to play the game with me, now I'm playing the game with you."

46.     Sgt. Hemminger again demanded Gray's identification.

47.     Gray pulled out his wallet to provide Sgt. Hemminger with his identification.

48.     Gray responded: "I'm engaged in constitutionally protected expression."

49.     When Gray said these words, Sgt. Hemminger pointed at an officer who had arrived during the encounter and told the officer to handcuff Gray.

### Gray is arrested and charged with obstruction, notwithstanding clear Georgia Supreme Court precedent to the contrary.

50.     At Sgt. Hemminger's direction, the officer placed Gray in handcuffs.

51.     The officer then removed Gray's wallet and obtained Gray's identification card and handed it to Sgt. Hemminger.

52.     Sgt. Hemminger arrested Gray.

53.     Sgt. Hemminger cited Gray for obstruction in violation of O.C.G.A. § 16-10-24(a) because Gray refused to identify himself upon Sgt. Hemminger's demand.

54.     Sgt. Hemminger later explained, in a recording captured by his body-worn camera, that he arrested Gray because "I asked him for his identification and he kept going on and he started playing the game, started recording the interaction, trying to draw it out."

55.     Sgt. Hemminger had no authority to compel Gray to identify himself because Gray was not violating any law.

56.     Sgt. Hemminger explicitly acknowledged that Gray was not violating any law by being present in an open public space outside City Hall.

57.     The City of Port Wentworth's ownership of the open public area outside City Hall, a traditional public forum, did not provide Sgt. Hemminger with the authority to expel Gray from that space. *Se. Promotions, Ltd. v. W. Palm Beach*, 457 F.2d 1016,

1019 (5th Cir. 1972) (the notion that a "municipality should be permitted to silence free expression" because it owns the property is "clearly untenable").

58.    Gray was not trespassing in a public space and could not lawfully be expelled, let alone arrested, for exercising his rights under the First Amendment.

59.    As Georgia's Supreme Court held in 1992, where a person "had a right under the First Amendment to engage in expressive activity at the time and place," including in "traditional public fora," they "could not be convicted of criminal trespass because the State would not be able to prove they were present 'without authority.'" *Langton v. State*, 261 Ga. 878, 878–79 (1992) (cleaned up).

60.    Sgt. Hemminger therefore lacked the authority to require Gray to leave a traditional public forum, to detain Gray, or to require Gray to identify himself.

61.    Nevertheless, Sgt. Hemminger handcuffed Gray and transported him to a municipal jail, where Gray was held for several hours.

62.    When Gray was released, Sgt. Hemminger told him that there was no appeal process with respect to the trespass notice, which was "basically permanent."

63.    The City of Port Wentworth, by and through the State of Georgia, brought criminal charges against Gray for obstruction.

64.    The charges against Gray concluded in his favor upon entry of a *nolle prosequi* on May 25, 2023, almost two years after his arrest.

65.    Because of the criminal charges, Gray was required to retain a criminal defense attorney and travel to and from his home in Florida to Port Wentworth.

### INJURIES TO PLAINTIFF

66.    Sgt. Hemminger injured Gray by suppressing his right to engage in expressive activity protected under the First Amendment, unlawfully detaining him in

8

violation of the Fourth Amendment, subjecting him to prosecution for exercising his constitutional rights, and prohibiting him from continuing to engage in protected expression.

67.     On July 19, 2021, Sgt. Hemminger, acting at the behest of a municipal employee of the City of Port Wentworth, prevented Gray from continuing to engage in peaceful protected expression about society's treatment of homeless veterans, physically restrained Gray, and issued an order barring him from ever engaging in protected expression outside of Port Wentworth City Hall.

68.     Gray was also injured because Sgt. Hemminger detained, handcuffed, and imprisoned Gray without reasonable articulable suspicion of crime, unjustly restraining Gray's free movement.

69.     Gray was further injured because Sgt. Hemminger stripped him of his anonymity, forcing him to identify himself and recording his name and information in public records.

70.     Sgt. Hemminger's conduct in detaining, interrogating, arresting, and imprisoning Gray degraded his personal dignity, restrained his personal autonomy, and further eroded his faith that police will "support and defend" the United States Constitution.

71.     As a result of Sgt. Hemminger's conduct and the City of Port Wentworth's institution of criminal proceedings, Gray was compelled to retain a criminal defense attorney, to incur the expense and hassle of travel between Florida and Port Wentworth to attend hearings, and to fear the possibility of incarceration.

72.     Gray's injury is ongoing because Sgt. Hemminger issued a directive prohibiting him from ever setting foot in the open public spaces around Port

Wentworth's City Hall, its principal place of public governance. In permanently exiling Gray from a traditional public forum due to city employees' objection to his message, with no means of appealing the expulsion order, Sgt. Hemminger continues to violate Gray's core First Amendment rights.

73.     Gray wants to continue advocating for homeless veterans in Port Wentworth, including in front of its City Hall. But Sgt. Hemminger's issuance of a trespass order, coupled with efforts to prosecute Gray for his protected expression, caused and continue to cause Gray to fear detention, arrest, invasion of privacy, and imprisonment for exercising his First Amendment right to engage in such advocacy.

**FIRST CAUSE OF ACTION**
**Violation of the First Amendment**
**(42 U.S.C. § 1983)**
**(Against Sgt. Hemminger in his Individual Capacity)**

74.     Plaintiff re-alleges and incorporates paragraphs 1-73 of this Complaint as if repeated here.

75.     The public parks, streets, and sidewalks of the City of Port Wentworth, including the open public space in front of Port Wentworth City Hall, are traditional public fora, immemorially held in trust for the use of the public to communicate thoughts or discuss public questions. *Frisby v. Schultz*, 487 U.S. 474, 480 (1988).

76.     It is well established that the First Amendment protects expression on public issues. *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011).

77.     It is also well established that the First Amendment protects the display of signs, a "venerable means of communication that is both unique and important." *City of Ladue v. Gilleo*, 512 U.S. 43, 54 (1994); *see also Snyder*, 562 U.S. at 454 (picketers' signs).

78.     Gray's expressive activity, holding a political sign in front of a public building, is core political speech protected by the First Amendment.

79.     Because Gray held his sign in a traditional public forum, limits on his expression must satisfy strict scrutiny.

80.     A restriction on speech is viewpoint discriminatory where the speech is restricted "because of its message." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995).

81.     Gray was ejected and permanently banished from the open public spaces around Port Wentworth's City Hall because one or more city employees objected to his message.

82.     Gray's ejection and banishment was therefore viewpoint discriminatory.

83.     Even if Gray's ejection and banishment were instead premised on the content, and not the viewpoint, of his message, Defendant's response would fail strict scrutiny.

84.     Even if Gray's ejection could be justified on a temporary basis, Gray's permanent expulsion from a traditional public forum is not narrowly tailored to address any legitimate government interest.

85.     Gray is entitled to declaratory relief, compensatory damages, nominal damages, and the reasonable costs of this lawsuit, including reasonable attorneys' fees, against Sgt. Hemminger.

86.     Because the retaliatory actions taken by Sgt. Hemminger were malicious, oppressive, and in reckless disregard of Gray's well-established First Amendment rights, Gray is entitled to punitive damages against Sgt. Hemminger.

### SECOND CAUSE OF ACTION
### First Amendment Retaliation
### (42 U.S.C. § 1983)
### (Against Sgt. Hemminger in his Individual Capacity)

87.     Plaintiff re-alleges and incorporates paragraphs 1-73 of this Complaint as if repeated here.

88.     It is well established that the First Amendment protects "verbal criticism and challenge directed at police officers." *Houston v. Hill*, 482 U.S. 451, 461–62 (1987).

89.     Gray's expression—politely questioning Sgt. Hemminger's authority to expel him from a traditional public forum and taking steps to film his conduct—was protected by the First Amendment.

90.     Sgt. Hemminger was motivated to detain, arrest, and incarcerate Gray because of his expressive activity, which Sgt. Hemminger characterized as "the game."

91.     Sgt. Hemminger retaliated against Gray for exercising his rights under the First Amendment.

92.     The actions by Sgt. Hemminger would be sufficient to deter a person of ordinary firmness from exercising their First Amendment rights, including the rights to expression in public spaces and to film public officials engaged in public business. These actions included:

    (a)     Physically detaining and arresting Gray;

    (b)     Directing an officer to place Gray in handcuffs;

    (c)     Requiring Gray to provide identification;

    (d)     Directing an officer to search Gray without his consent;

    (e)     Jailing Gray; and

    (f)     Prohibiting Gray from engaging in future expressive activity in a
            traditional public forum.

93.     As further alleged in paragraphs 55 through 60, *supra*, and in paragraphs 133 through 143, *infra*, Sgt. Hemminger lacked reasonable suspicion, arguable reasonable suspicion, probable cause, or arguable probable cause to detain or arrest Gray.

94.     Sgt. Hemminger had no lawful basis to issue a permanent trespass notice barring Gray from the open public spaces outside of Port Wentworth City Hall.

95.     In arresting Gray, Sgt. Hemminger interrupted Gray's protected expressive activity.

96.     In issuing a permanent trespass notice, Sgt. Hemminger prevented Gray from continuing to engage in protected expression in the future.

97.     The retaliatory conduct by Sgt. Hemminger damaged Gray by depriving him of his well-established First Amendment right to engage in expressive activity on the open public spaces outside of City Hall, a traditional public forum, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages, against Sgt. Hemminger.

98.     Because the retaliatory actions taken by Sgt. Hemminger were malicious, oppressive, and in reckless disregard of Gray's well-established First Amendment rights, Gray is entitled to punitive damages against Sgt. Hemminger.

## THIRD CAUSE OF ACTION
### Violation of First Amendment: Right to Anonymity and Freedom from Compelled Speech
### (42 U.S.C. § 1983)
### (Against Sgt. Hemminger in his Individual Capacity)

99.     Plaintiff re-alleges and incorporates paragraphs 1-73 of this Complaint as if repeated here.

100.   The First Amendment protects the right of speakers to engage in public expressive activity, including solicitation, without being compelled to identify themselves to government authorities. *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 165–67 (2002).

101.   The First Amendment also protects the right to refrain from speaking, just as it protects the right to speak. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

102.   Compulsory identification of a speaker requires, at a minimum, sufficient cause. *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 200 (1999).

103.   Sgt. Hemminger did not have sufficient cause to compel Gray's identification because, as Sgt. Hemminger noted, Gray was expressing himself lawfully in a traditional public forum.

104.   Gray, a visitor from out of state, was unlikely to be recognized by any person in Port Wentworth, particularly because his face was obscured with a COVID-19 mask.

105.   On information and belief, Gray's identity was not known to Sgt. Hemminger before Sgt. Hemminger confronted Gray.

106.   Sgt. Hemminger knew that Gray did not want to identify himself to law enforcement.

107.   Sgt. Hemminger attempted to compel Gray to identify himself to law enforcement.

108.   When Gray hesitated, Sgt. Hemminger effectuated Gray's arrest.

109.   Sgt. Hemminger then recorded information about Gray's identity in records, including but not limited to a written trespass notice that would subject Gray to arrest if he returns to the open public spaces in front of City Hall.

110.    By forcibly compelling Gray to identify himself, Sgt. Hemminger injured Gray by violating his well-established First Amendment right to engage in anonymous expression, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages, against Sgt. Hemminger.

111.    Because Sgt. Hemminger's conduct in forcibly compelling Gray to identify himself was malicious, oppressive, and in reckless disregard of Gray's well-established First Amendment rights, Gray is entitled to punitive damages against Sgt. Hemminger.

### FOURTH CAUSE OF ACTION
### Violation of First Amendment: Prior Restraint of Gray's Protected Speech
### (42 U.S.C. § 1983)
### (Against Sgt. Hemminger in his Individual Capacity)

112.    Plaintiff re-alleges and incorporates paragraphs 1-73 of this Complaint as if repeated here.

113.    On information and belief, the City of Port Wentworth has implemented a system of prior restraints by issuing trespass warnings denying access to public spaces traditionally used for expressive activity. *See, e.g.*, *Catron v. City of Saint Petersburg*, 658 F.3d 1260, 1267–69 (11th Cir. 2011) (applying prior restraint doctrine to trespass warnings).

114.    On information and belief, the City of Port Wentworth delegates to its police officers, including Sgt. Hemminger, the authority to issue trespass warnings, notices, or directives to members of the public, barring them from city property or public spaces.

115.    Once an individual receives a trespass notice, reappearing in the noticed location can result in criminal citation or arrest. O.C.G.A. § 16-7-21(b)(2).

116.    Prior restraints are permissible, if at all, only where they are issued pursuant to "narrow, objective, and definite standards[.]" *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969).

117.    On information and belief, the City of Port Wentworth's system of issuing trespass notices is not subject to narrow, objective, and definite standards.

118.    A prior restraint is permissible, if at all, only where the government bears "the burden of going to court" to justify its prior restraint. *United States v. Frandsen*, 212 F.3d 1231, 1238 (11th Cir. 2000).

119.    A prior restraint is permissible, if at all, only where the "restraint prior to a judicial determination" is only "for a specified brief time period in order to preserve the status quo[.]" *Id.*

120.    A system of prior restraint is permissible, if at all, only where it provides "an avenue for prompt judicial review of" an official's decision. *Id.*

121.    Sgt. Hemminger issued a trespass warning to Gray, permanently prohibiting Gray from continuing to engage in expressive activity in front of Port Wentworth City Hall.

122.    The City of Port Wentworth's system of issuing trespass notices did not require Sgt. Hemminger to submit his determination to any court.

123.    The City of Port Wentworth's system of issuing trespass notices did not provide an avenue for prompt judicial review of the decision by Sgt. Hemminger to bar Gray from a public space.

124.    Sgt. Hemminger's trespass notice to Gray did not serve a legitimate governmental interest.

125.    The City of Port Wentworth's system of issuing trespass warnings for public spaces has no procedural safeguards, such as the ability to contest or appeal their issuance.

126.    Sgt. Hemminger told Gray that there was no way to appeal the trespass warning.

127.    In implementing, and applying to Gray, a system of prior restraints in the form of verbal and written trespass warnings without a meaningful opportunity to be heard, the City of Port Wentworth and Sgt. Hemminger injured Gray by depriving him of his First Amendment right to free speech, entitling Gray to declaratory and compensatory damages, including at least nominal damages.

128.    Because Sgt. Hemminger's imposition of a prior restraint without due process of law was malicious, oppressive, and in reckless disregard of Gray's well-established First and Fourteenth Amendment rights, Gray is entitled to punitive damages against Sgt. Hemminger.

## FIFTH CAUSE OF ACTION
### Violation of Fourth Amendment: Unlawful Seizure and False Arrest
### (42 U.S.C. § 1983)
### (Against Sgt. Hemminger in his Individual Capacity)

129.    Plaintiff re-alleges and incorporates paragraphs 1-73 of this Complaint as if repeated here.

130.    Gray had a right under the Fourth Amendment, as incorporated against the State of Georgia and its municipalities by the Fourteenth Amendment, to be free from unreasonable seizure by Sgt. Hemminger. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *Alston v. Swarbrick*, 954 F.3d 1312, 1318–19 (11th Cir. 2020).

131.    Sgt. Hemminger seized Gray by telling him that he was not free to leave, demanding that Gray provide identification, ordering that Gray be handcuffed, and transporting Gray to a municipal jail.

132.    Sgt. Hemminger seized Gray by directing an officer to handcuff Gray.

133.    Gray's detention was unreasonable and was not pursuant to a warrant.

134.    A seizure must be "justified at its inception." *Terry*, 392 U.S. at 20. An investigative stop is permissible only where an officer has "an objectively reasonable suspicion" that an individual "had engaged, or was about to engage, in a crime." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004).

135.    Sgt. Hemminger repeatedly acknowledged to Gray and to Port Wentworth municipal employees that Gray was not violating any law.

136.    A "reasonable officer in the same circumstances and possessing the same knowledge" as Sgt. Hemminger could not have reasonably believed that he or she had reasonable suspicion to detain Gray. *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (quoting *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994)).

137.    A reasonable officer could not have reasonably believed that the open public spaces around City Hall are private property.

138.    A reasonable officer could not have reasonably believed that government employees can require members of the public to discontinue expressive activity in a traditional public forum because the employees object to the message conveyed.

139.    The detention of Gray by Sgt. Hemminger to compel Gray's identification was therefore without arguable reasonable suspicion.

140.    Sgt. Hemminger arrested Gray, directing an officer to place handcuffs on Gray without an articulable and objectively reasonable belief that Gray was potentially dangerous or had committed a crime.

141.    Probable cause for trespassing does not exist where a person "had a right under the First Amendment to engage in expressive activity at the time and place," including in "traditional public fora," because the speaker cannot be said to be "present 'without authority.'" *Langton v. State*, 261 Ga. 878, 878–79 (1992) (cleaned up).

142.    A municipality's ownership of the land encompassing a traditional public forum does not authorize it to suppress speech in that forum. *Southeastern Promotions, Ltd. v. W. Palm Beach*, 457 F.2d 1016, 1019 (5th Cir. 1972).

143.    A reasonable officer in the same circumstances and possessing the same knowledge as Sgt. Hemminger could not have believed that probable cause existed to arrest Gray. *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995); *Alston*, 954 F.3d at 1319.

144.    Gray's arrest was therefore without arguable probable cause.

145.    In detaining and arresting Gray without adequate cause, Sgt. Hemminger damaged Gray by depriving Gray of his well-established Fourth Amendment right to be free of unreasonable seizure, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages.

146.    Because the seizure of Gray by Sgt. Hemminger was malicious, oppressive, and in reckless disregard of Gray's well-established Fourth Amendment rights, Gray is entitled to punitive damages against Sgt. Hemminger.

## PRAYER FOR RELIEF

WHEREFORE, Gray respectfully requests that this Court enter judgment against Defendant and issue the following forms of relief:

A.     Declare that Gray's expressive activity was protected by the First Amendment;

B.     Declare that the public space outside of Port Wentworth City Hall is a traditional public forum;

C.     Declare that Sgt. Hemminger violated Gray's First Amendment right to engage in free speech;

D.     Declare that Sgt. Hemminger violated Gray's First Amendment rights to anonymous speech and to refrain from speaking;

E.     Declare that Sgt. Hemminger's criminal trespass warning violated Gray's fundamental and procedural due process rights;

F.     Declare that Sgt. Hemminger violated Gray's Fourth Amendment right to be free from unreasonable seizure;

G.     Declare that Sgt. Hemminger's issuance of a criminal trespass warning constitutes an unlawful prior restraint;

H.     Award nominal, compensatory, and other damages to Gray in an amount determined by the enlightened conscience of fair and impartial jurors;

I.     Award punitive damages against Sgt. Hemminger;

J.     Award reasonable attorneys' fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law; and

K.     Award such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

DATED:        July 17, 2023

Respectfully submitted,

/s/ Clare Norins
CLARE NORINS
Georgia Bar No. 575364
FIRST AMENDMENT CLINIC
University of Georgia
School of Law
Post Office Box 388
Athens, Georgia 30603
Tel:     (706) 542-1419
cnorins@uga.edu

ADAM STEINBAUGH*
PA Bar No. 326475; CA No. 304829
HARRISON ROSENTHAL*
KS Bar No. 28894; MO No. 72990
JAMES M. DIAZ*
VT Bar No. 5014
FOUNDATION FOR INDIVIDUAL RIGHTS
     AND EXPRESSION
510 Walnut Street; Suite 1250
Philadelphia, PA 19106
Tel:     (215) 717-3473
Fax:     (267) 573-3073
adam@thefire.org
harrison.rosenthal@thefire.org
jay.diaz@thefire.org

*Pro Hac Vice motions forthcoming

Counsel for Plaintiff Jeffrey Gray